May it please the court. Ms. Kurz. Thank you, your honor. Mr. Michael challenges the substantive reasonableness of his sentence. The government argues that his sentence is not substantively unreasonable simply because the district court did not give his mitigating factors the weight that he thinks they deserve. But this is not the typical substantive reasonableness challenge. In this case other participants in the sentencing decision disagreed with the district court's weighing of the relevant sentencing factors and they disagreed by significant margins. I want before I discuss that and elaborate on it, I want to discuss the mistake that I made in my briefing. I incorrectly cited the statute that applies to supervised release revocations. I should have cited to the statute relevant to probation revocation violations. So I agree, concede that the district court imposing sentence against Mr. Michael should have considered all of the 3553A factors, not just those that are relevant to supervised release. But here is why that mistake that I made does not impact the strength of my argument. In this case the probation officer recommended a sentence of 60 months. That's 36 months below the sentence who did the original pre-sentence investigation report was different from the probation officer who handled the probation violation reports and recommended the 60-month term. But I have a hard time believing that that probation officer did not consult pre-sentence investigation report for making his recommendation. So my point being here is that the probation officer would have been aware of the offense conduct. He would have been aware that all of the sentencing factors applied. He would have been aware of each of the probation violations and he would have been the person to have day-to-day contact with the defendant and give appropriate weight to his offense conduct as well as his violation conduct. Also the assistant United States attorney in this case recommended a sentence of 40 months. The prosecuting attorney is my recollection remained on the case from the time of original sentencing through the violation revocation hearings. The prosecuting attorney also would have had access to the PSR. He would have had intimate familiarity with the offense conduct. He would have been aware of the sentencing factors and the need for just punishment and yet he recommended a the original sentencing would perhaps have been in the best position to evaluate the facts of the case because he heard expert testimony at sentencing. He too was aware of the offense conduct from the pre-sentence investigation report and he decided that probation was the appropriate sentence in this case. Now the original judge not only would have been aware of the underlying criminal conduct, he was also aware of all of the conduct set forth in the first probation violation report issued on March 20 of 2017. Counsel, Ms. Kurz, could you help me understand what you're appealing now in arguing error in contrast to what went up the first time? The district court on the first revocation was that was sent back by this court to take a look and make sure that the court properly considered certain items. Were those than in the initial appeal? The error that I believe was made in the remand appeal. I'm not contesting that the trial court did not give a fulsome enough explanation for her 96-month sentence. I am contending that this was a huge variance from the argument is not that that she didn't adequately explain it in terms of allowing this court to do appropriate appellate review, but that she didn't explain it in the substantive terms as to what justifies going from a range of three to nine months all the way up to the range of 97 to 120 months. Well, the court seemed to rely on an assessment of the record to opine that the defendant posed a danger, potentially posed danger to children based on the revocation conduct and opinions of the court about the those the basis for your contention that there's an abuse of discretion or some other reversible error? Yes, that is part of the basis for error on remand. I would point to, and it's because the district court did not consider all of the mitigating factors. Now, I did a very detailed sentencing memo and I know that the judge isn't required to comment on every single fact set forth in the sentencing memo, but when a defendant makes a non-frivolous argument as to what the court should consider it, it should at least comment somewhat. And here we had an opinion, this was attached, this report was attached to the government sentencing memo from a Dr. Tamara Lynn, who is a psychology services branch administrator for the Bureau of Prisons. She assessed Mr. Michael as being low to moderate risk. So the district court found that he's high risk, therefore has to be revoked and do 96 months, but the BOP evaluator is saying low to moderate risk. And under the BOP's guidelines, he doesn't even get sex offender treatment in prison where he is at now. He can apply for treatment later in his sentence and they may put him in a sex offender treatment program if they think he qualifies and he's willing to transfer to another prison. It's not offered at the prison where he's at. Counsel, I have a follow-up question on that and I hope I'm not interrupting your answer to Chief Judd Smith. On the treatment aspect of that part of the testimony, I understood that there was concern about treatment for both sex offender problems and his being on the spectrum. Were there any tapia concerns here that there was any effort? You've discussed sort of this idea that he can't get treatment at the prison for several more years until he's closer to a release date. Was there any concern that those kinds of factors played into the district court's decision for treatment, maybe raising a concern about tapia? Well, if I'm understanding your question correctly, I'm not raising a tapia claim. I am saying that the district court in its assessment of the risk level and the whole point of revocation was the district court's opinion and the probation officer's opinion that he wasn't getting what he needed in the community, but he's not getting anything in the Bureau of Prisons. So my point was if that's your basis for imposing a 96 month sentence, it's factually incorrect. It doesn't exist. I'd like to reserve at least a minute for my rebuttal, so I'll stop here unless there are more questions. Thank you. May it please the court. My name is Phil Coppe and I represent the government in this case. I appreciate, first of all, Ms. Kerr's concession that she cited the wrong statute. I think that it undermines her entire argument in this case because the one thing that she still, it seems to me, declines to acknowledge is that since this is a revocation from a probation revocation, not supervised release, we're back to the original sentencing. I think, you know, there's a lot to unpack here in 10 minutes, but if you look at page 36 of my brief, I think if I, there's two things I want to emphasize here. Number one, a probation violation does not trigger a sentence for the violation conduct. That's different because that's what it does in supervised release revocation, but a re-sentence on the crime of conviction, and that's how I did it at page 36 of our brief. That's the Dicoteau case, and then if you go to, if you go to page 39 and 40 of our brief, the Holdsworth case, which does not appear in her, a reply brief does not appear in her original brief. She does not acknowledge that, and this is key. The Holdsworth case clearly holds that when you're in a situation involving a probation revocation situation, as we are here, in looking to determine reasonableness of the sentence, you look at the guide, the original guideline sentences, and Holdsworth involved a situation where his original guideline sentence, I think it was 41 to 51 months, and after he violated that probation, he got a 51 month term of imprisonment, and the argument there is it is here, is like, wait a minute, his revocation table sentence was something like 5 to 11 months, so if you look at that and compare it to the sentence, well that, yeah, that's a huge variance, just like it was here, but in our case... So how do we factor that in, Mr. Coffey? You know, how, you've got two sets of guidelines, and in this one we've even got a greater disparity, and that's a tough one, 3 to 9 versus 97 to... 106 or something, 97 to 125, yeah. So they can't, you can't, one can't be ignored completely, can it? I think that's your point, really, about the original guideline. Right, no, one can't be ignored completely, and in fact, if we talk about, I think I cite a case that says, well, of course, at a probation revocation, you could also look at the revocation conduct, and so you really have two things to look at. You look at the original crime, because the statute clearly says you have to consider all the 3553A factors. Right before the argument, I went through Ms. Kurz's briefs. You see almost nothing, nothing talking about the original conduct that resulted in the original probationary sentence, and unfortunately, at the focus of the party's arguments, or I should say the party's arguments, defense arguments, had to do with the question of recidivism. The arguments, and Ms. Kurz is making that today, that the chance of recidivism was low, and she had expert opinions that, or they, or Michael had expert opinions that supported that, that said he's probably a low-risk offender, and that certainly influenced the government's 40-month recommendation, but subsequent developments, including, first of all, his possession of this book, you know, youthful prey, child predators who kill, or whatever. As Judge Ketchmark noted at the second sentencing, the resentencing, she said this should have raised some red flags, and I think, yeah, maybe it should have, and then when you look at the conduct, you know, he's surveilling children, he's interacting with children at the bowling alley, and doesn't report it to his probation officer. He's got a device now where he's trying, he's searching for internet porn, putting in child pornography terms, you know, teen, preteen. I have a question, just maybe this is too big of a question to answer in one case, but it seems on the one hand, there was concern that this man had expressed some additional, some continued interest in children, and he sort of admitted struggling with some sex offender-related issues, and that was a concern for the court, but then there was also the concern that he wasn't being honest about sort of some adult, adult partner, and some withholding of information, and I wondered if that's ever, if that was addressed at all, this sort of tension between we want someone like this to be honest so that they can get through treatment and confront the issues, but then that's the reason then that we're increasing the sentence. Are you getting my point? So he's being harmed for being honest, but also for withholding information. It just seems like a maybe it'd be unsolvable. I don't know how you address it. Well, I'm not sure either, Judge, but I think you've touched on something that I wanted to address, and it may not answer your question, and I apologize if it doesn't, but one of the things that influenced the two experts that the defendant had, we're talking about honesty, is that he was in treatment, and he was saying that he was no longer attracted to children, and that, I mean, that's really all the experts had to go on was him saying, I'm not, I've been in treatment, and I'm not sexually aroused anymore by seeing this sort of thing, which caused them to think, okay, he isn't a risk out there, and now when you have these admissions that he is, when we know that he wasn't being truthful, that I think is what makes him so dangerous, and that's why I think you cannot, and I'm getting back to Holdsworth again, you've got to understand that since this is an original sentencing, yes, it now appears, at least it did to Judge Ketchmark, that he is much more dangerous than the experts thought. Now, it may well be that he's just somebody who is in, you know, like his mother's basement, you know, looking at this stuff, and he'll never harm a child, but you don't know. The red flags, as the judge said, are all there. But the other thing that I think I don't want to get lost in the mix is, you know, basically the court gave him a break the first time. This is a case where, when you look at the number of images, when you look at the type of conduct, and I should, I want to slap myself because I engage in this myself, I noticed that in the very first page of my brief, I say that these were videos of children as young as toddlers engaging in sexually explicit conduct. Well, they weren't engaging in it, I don't know why I wrote it that way. I mean, these children were being raped and sodomized, and he's watching this, and he doesn't think that that's inappropriate. And it was treated as a mitigating factor that he didn't, you know, he was socially underdeveloped, that he didn't really understand how serious this was. And so what I think differentiates the sentence that Judge Ketchmark imposed versus the original probationary sentence that Judge Whipple gave is that, first of all, Judge Whipple focused almost entirely on, you know, is he a danger? Relying on the experts who were relying on Michael to tell the truth, and he didn't, and it overshadowed the seriousness of the offense. I mean, this isn't a 17 or 18 year old looking at you know, 15 year olds engaging in sex. This is a grown person in his 30s watching infants being raped and Mr. Coffey? Yes. This is Judge Smith again. Yes. When it went back the first time, when it came up the first time, the government had recommended 40 months, and then when it comes back to, when it comes to this court, now I understand that it was the last time it was here, there was a 60 month recommendation, or at least the last time before the district court, the government recommended 60 months. No, that I think was the probation officer. The probation officer. Yes. What sentence did the government seek before Judge Ketchmark on her second hearing? We have asked consistently that it be at least 40 months, and if I could address that in the last 52 seconds, that was our original recommendation. It's never changed. And I think we stuck that, I was not involved in that, I handled the case on appeal, but I think in these kinds of situations, you know, there is a fear that may be unwarranted that we are being vindictive if we go and ask for a higher sentence. We asked for that original 40 sentence when we, like everybody else, thought that he wasn't going to be a danger. And then when it turns out that's probably not the case, we decided to stick to that. And so we said at least 40, knowing Judge Ketchmark would likely go higher. But we did not want to fight. You feel the public would have been appropriately protected had Judge Ketchmark entered a sentence of 40 months instead of twice that? Right. But that of course is not our, you know, that was not our call. I mean, that's ultimately the judge's call. And granted, you have a probation officer who went higher than us, and now you have a judge who's gone higher. But I don't know of any cases, Your Honor, where the court has found a sentence unreasonable based on what the probation officer thought or what the government recommended. I'm not saying that's not something you couldn't take into account, but that's certainly not dispositive. I see I've used my time. Thank you. I do have one other thing I just wanted to know. You've made the reference, I think, three times that Michael lied about whether or not he was attracted to children or continued to be attracted to children. And I think one of the things that we just need to just recognize that when people suffer from addictive and compulsive behaviors, that when they are in remission, the attraction actually does become greatly diminished to the point where people say, I no longer have that attraction. But if you don't work the continuing treatment and you have a relapse type situation, those urges will come back. And it doesn't matter whether that urge is drug addiction or alcoholism or pornography addictions. It just changes. And so I think there's a world in which particularly this person who's on the spectrum could have been wholly honest in saying, I am not attracted now and find himself, you know, a year later being completely in the throes of his addiction again, because it has a lot more to do with the work that the person is doing on the program. Now, I think ultimately it doesn't matter in the decision because the judge takes the person as they exist at the time of sentencing. You know, but I just wanted to push back on that because I think that it's particularly in light of a person who happens to be on the spectrum where really probably can't defend himself very well, that may not be a fair characterization. All right, your honor, I'm out of time. So thank you. All right. Ms. Kurz, your rebuttal. Your honor. First I want to comment on the Holdsworth case. I think it is not controlling precedent on this court. In Holdsworth, the actual issue as to which controls, the chapter 7 revocation table or the guideline range as originally calculated, it never squarely addressed that issue. It's dicta. It's not beholden. And the 51 months, the imposition of that sentence could have been justified on other factors in the case. It didn't require a holding saying that the sentence was presumptively reasonable. The original opinion in this case treated it as an upward variance. The government did not challenge that in a petition for rehearing. I think they may have law of the case problems in trying to make that point now. Also, if the guidelines intended that on a probation revocation, you immediately go back to the original guideline range, then probation revocation would not have been lumped in chapter 7 with supervised release revocation. The only reason you apply the presumption of reasonableness, and you don't have to do that in any case, you apply it because the district court's opinion aligns with the sentencing commission's opinion. And what the sentencing commission says is go to chapter 7 first. And it gives you a revocation table that tops out at 63 months for those in criminal history category 6 with grade A violations, which are crimes of violence, controlled substance offenses, or offenses that carry sentences of 20 years or more. My client is nowhere near the maximum 63 months on the revocation table. Sorry, I did that really fast. Thank you. Thank you, Ms. Kearse. Thank you also, Mr. Coffey. The court appreciates you both coming before us today and providing argument, and we will continue to study your briefs and render a decision in the matter as we're able to get to it. Thank you.